[Cite as *Halenar v. Ameritech-Ohio SBC/Ameritech*, 2011-Ohio-2030.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   94976

THOMAS L. HALENAR

PLAINTIFF-APPELLEE

vs.

AMERITECH-OHIO SBC/AMERITECH, ET AL.

DEFENDANTS-APPELLANTS

JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-689354

**BEFORE:**   Boyle, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:**     April 28, 2011

**ATTORNEYS FOR APPELLANT**

Fred J. Pompeani
Rebecca A. Kopp
Lisa A. Reid
Porter, Wright, Morris & Arthur LLP
925 Euclid Avenue
Suite 1700
Cleveland, Ohio    44115-1483

**ATTORNEYS FOR APPELLEE**

**For Thomas L. Halenar**

Lawrence W. Corman
55 Public Square, Suite 1717
Cleveland, Ohio    44113

**For Bureau of Workers' Compensation**

Mike DeWine
Attorney General
Sandra J. Lisowski
Assistant Attorney General
615 West Superior Avenue
11th Floor
Cleveland, Ohio    44113

MARY J. BOYLE, P.J.:

{¶ 1}  Defendant-appellant, Ameritech-Ohio SBC/Ameritech, n.k.a. AT&T, Inc. ("AT&T"), appeals from the judgment of the common pleas court in favor of plaintiff-appellee, Thomas Halenar, following a jury verdict entered in his favor on his claim for additional allowances and right to participate in the workers' compensation system. AT&T raises seven assignments of error, challenging the trial court's jurisdiction over all of the claims, evidentiary rulings, a discovery ruling, and jury instructions.  For the reasons discussed below, we affirm.

Procedural History and Facts

{¶ 2}  Halenar's claims for workers' compensation benefits arise out of a 1992 motor vehicle accident that occurred in the course and scope of his employment when his pickup truck was hit head-on by an intoxicated driver.  Halenar was 38 years old at the time of the accident and weighed approximately 300 pounds.

{¶ 3}  Halenar suffered injuries as a result of the accident and has previously been allowed to participate in the workers' compensation fund for the following conditions: "bursitis and tendonitis, left shoulder; plantar fasciitis, right heel; prepatellar bursitis, both knees; and lumbar sprain."  These initial allowances were not disputed by AT&T.

{¶ 4} In the ten years following the accident, Halenar had three knee surgeries.

{¶ 5} On October 31, 2008, Halenar sought additional allowances for menisci tears and aggravation of degenerative changes in both knees. On January 15, 2009, a hearing officer denied Halenar's claim, finding insufficient evidence "to establish that the aggravation of the degenerative changes bilateral knees is warranted." The hearing officer further denied Halenar's request for additional allowance of menisci tears based on "vagueness." The order was subsequently vacated by a staff hearing officer, who granted in part and denied in part Halenar's claim, stating the following: "this claim is additionally allowed for aggravation of pre-existing degenerative changes right knee." The staff hearing officer further ordered that "this claim is specifically disallowed for bilateral medial menisci tears and aggravation of pre-existing degenerative changes left knee." Halenar appealed the decision to the Industrial Commission, which refused the appeal. Following the denial, on May 6, 2009, Halenar filed the underlying case in common pleas court.

{¶ 6} The matter proceeded to a jury trial where the following evidence was presented.

{¶ 7} In addition to his own testimony, Halenar presented the expert testimony of Dr. John Wilber, an orthopedic surgeon. Dr. Wilber examined Halenar in April 1993 and subsequently performed surgery on Halenar's right knee in August 1993. In September 2001, Dr. Wilber performed surgery on Halenar's left knee and again performed a second

surgery on his right knee in 2002. According to Dr. Wilber, Halenar has medial and lateral meniscus tears in his right knee and a lateral meniscus tear in his left knee, which he opined was proximately caused by Halenar's original car accident of 1992. Dr. Wilber further opined that Halenar has suffered a substantial aggravation of his preexisting mild degenerative changes in his knees as a result of the same accident.

{¶ 8} Conversely, AT&T presented the expert testimony of Dr. Gordon Zellers, who specializes in the field of occupational medicine and is board certified in emergency medicine, forensic medicine, disability medicine, and as a medical review officer. Dr. Zellers opined that the additional allowances sought by Halenar were not proximately caused by the 1992 accident. According to Dr. Zellers, these conditions arose too remote in time to be proximately related to the 1992 accident.

{¶ 9} The jury ultimately found in favor of Halenar, finding that he is entitled to participate in the workers' compensation system for the additional conditions sought.

{¶ 10} AT&T appeals, raising the following seven assignments of error.

## Trial Court's Jurisdiction

{¶ 11} In its first assignment of error, AT&T argues that the trial court lacked jurisdiction to grant Halenar's oral motion to amend the complaint to include a claim for lateral menisci tears in both knees. It contends that the Industrial Commission never adjudicated this issue, and therefore the court lacked jurisdiction to allow the jury to consider

the claim. AT&T further argues that Halenar's motion to amend should have been denied because allowing the amendment immediately prior to trial prejudiced AT&T's case. We find both arguments unpersuasive.

{¶ 12} It is well settled that a common pleas court's jurisdiction to consider claims under a R.C. 4123.512 appeal is limited to the medical conditions addressed in the administrative order below from which the appeal is taken. See *Ward v. Kroger Co.*, 106 Ohio St.3d 35, 2005-Ohio-3560, 830 N.E.2d 1155.

{¶ 13} In *Ward*, the court held that the trial court exceeded its jurisdiction in allowing a claimant to amend his complaint at the trial court level to include conditions that had not been addressed by the administrative appeal. Id. Relying on *Ward*, AT&T argues that the trial court lacked jurisdiction to allow an amendment to the complaint prior to trial to include "lateral" menisci tears in the knees.

{¶ 14} But contrary to AT&T's assertion, our review of the record reveals that Halenar specifically requested additional allowances for "menisci tears" in both knees, which would include "lateral," referring to the outside meniscus of the knee, and "medial," referring to the inside meniscus of the knee. This is not a situation where the claimant sought an allowance for a condition that it did not raise before the administrative body before filing a R.C. 4123.512 appeal. Thus, we find that the trial court did not abuse its discretion in allowing

Halenar to amend his complaint prior to trial to include all the conditions that he sought additional allowances from in the administrative proceedings below.

{¶ 15} We further cannot say that AT&T suffered any prejudice from the amendment. AT&T's expert consistently denied the existence of any menisci tears in either knee caused by the work-related accident. Dr. Zellers opined that if the accident had caused menisci tears in the right knee, such tears would have been discoverable at the time of the 1993 surgery. As for the left knee, he opined that there was no way to relate the tear found in the September 5, 2001 surgery to the car accident that occurred in 1992. Conversely, Halenar's expert, Dr. Wilber, testified as to a lateral menisci tear in the left knee and both a medial and lateral menisci tear in the right knee, which he opined was proximately related to the 1992 car accident. AT&T was aware of Halenar's position prior to trial, and we fail to see how it would have proceeded differently given that its expert denied that any tear in either knee could be related to the car accident.

{¶ 16} The first assignment of error is overruled.

### Directed Verdict

{¶ 17} In its second assignment of error, AT&T argues that the trial court erred by failing to inform the jury it granted AT&T's unopposed motion for a directed verdict as to the left medial meniscus tear.

{¶ 18} It contends that such failure amounts to reversible error because the jury verdict,

which simply referred to "torn menisci in the left knee," can "be read as to contradict the directed verdict." The gravamen of its claim is that the jury interrogatory was improperly "broad and non-specific." We find, however, that AT&T has waived this argument.

{¶ 19} Although AT&T objected "to any instruction concerning both meniscus [sic]" as a result of the trial court's alleged lack of jurisdiction, we do not think that is the same as objecting to an overly broad jury interrogatory. Indeed, AT&T's concern that the trial court's ruling on its motion for directed verdict on the "left medial meniscus tear" may result in an inconsistent verdict could have been obviated if it had requested specific jury interrogatories following the trial court's grant of directed verdict. It failed to do so; nor did it object to the jury interrogatories given. We therefore find that AT&T has waived this argument on appeal. See *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶52.

{¶ 20} The second assignment of error is overruled.

## Discovery Ruling

{¶ 21} AT&T argues in its third assignment of error that the trial court abused its discretion in denying its motion for a protective error and granting Halenar's motion for protective order. It argues that the trial court arbitrarily and unreasonably permitted Halenar to subpoena voluminous information from its expert, Dr. Zellers, while prohibiting it from obtaining the same from Halenar's expert, Dr. Wilber. We disagree.

{¶ 22} A trial court is vested with wide discretion in rendering decisions on discovery

matters. *Dandrew v. Silver*, 8th Dist. No. 86089, 2005-Ohio-6355,¶35, citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 1996-Ohio-265, 664 N.E.2d 1272. Thus, the applicable standard for appellate court review of a disputed trial court's handling of discovery matters is whether the trial court abused its discretion. An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable decision. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 23} Here, the trial court ordered that Dr. Zellers respond to Halenar's request for discovery related to the following: (1) Dr. Zellers's total income earned in the last two years from employment in "legal-medical matters as an expert witness"; and (2) the names of parties in which he has been obtained as an expert witness in the last two years. The court further ordered AT&T to respond to Halenar's second request for production of documents propounded on AT&T requesting: (1) a listing of all matters in which Dr. Zellers has prepared a report or testified as a witness on behalf of Porter Wright Morris & Arthur (the law firm defending AT&T) in the past two years; and (2) a list of all matters in which Dr. Zellers has served as an expert witness on behalf of AT&T in the past three years. AT&T had initially refused production of this information on the grounds that Halenar's request was untimely and that the information was irrelevant. AT&T likewise moved for a protective order on these same grounds.

{¶ 24} The record reveals that the court held a hearing on the matter and ultimately

concluded the information requested by Halenar was available and discoverable. Indeed, aside from being a timely request, the information was relevant for purposes of determining Dr. Zellers's pecuniary interest and bias in the case. See *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 436 N.E.2d 1008. While AT&T now acknowledges that this information was relevant and discoverable, it contends that the trial court abused its discretion in permitting Halenar to obtain such information as to its expert but denied AT&T the same opportunity with respect to Dr. Wilber.

{¶ 25} But the record reveals that AT&T was seeking to compel Dr. Wilber to produce documentation that he did not possess. Dr. Wilber testified that he does not act as an expert for nonpatients and does not track reports for patients. The record reveals that he sees approximately 80 patients a week and performs approximately ten surgeries a week. Halenar accordingly moved for a protective order on the grounds that Dr. Wilber cannot produce records that he does not have. Under these circumstances, we cannot say that the trial court abused its discretion in granting Halenar's motion for a protective order.

{¶ 26} The third assignment of error is overruled.

<u>Motion in Limine</u>

{¶ 27} In its fourth assignment of error, AT&T argues that the trial court abused its discretion in denying its motion in limine regarding the scope of Dr. Wilber's expert testimony because Dr. Wilber opined as to conditions outside of the scope of Halenar's appeal.

**{¶ 28}** A trial court's determination of the admissibility of expert testimony is reviewed for abuse of discretion. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶9. Likewise, a trial court's ruling on a motion in limine is left to the sound discretion of the trial court. *Ross v. Nappier*, 185 Ohio App.3d 548, 2009-Ohio-6995, 924 N.E.2d 916. Thus, absent a clear abuse of discretion, a reviewing court may not overturn a trial court's decision to admit or exclude relevant evidence. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291.

**{¶ 29}** Based on the same argument raised in its first assignment of error, AT&T argues that the trial court should have excluded Dr. Wilber's testimony as to any conditions except for "bilateral medial menisci tears" and "aggravation of pre-existing degenerative changes in left knee." Having already found that the trial court had jurisdiction over Halenar's claim for additional allowances for menisci tears in both knees, including lateral and medial, we cannot say that the trial court abused its discretion in denying AT&T's motion in limine.

**{¶ 30}** The fourth assignment of error is overruled.

<u>Jury Instructions</u>

**{¶ 31}** In its fifth and sixth assignments of error, AT&T argues that the trial court committed reversible error by providing two specific instructions, which it objected to below.

**{¶ 32}** The decision to give a specific jury instruction rests within the sound discretion

of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Sicklesmith v. Chester Hoist*, 169 Ohio App.3d 470, 2006-Ohio-6137, 863 N.E.2d 677, ¶62. In determining the appropriateness of jury instructions, an appellate court reviews the instructions as a whole. *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 629 N.E.2d 500. If the totality of the instructions clearly and fairly expresses the law, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. *Peffer v. Cleveland Clinic Found.*, 8th Dist. No. 94356, 2011-Ohio-450, ¶45. "A strong presumption exists in favor of the propriety of jury instructions." *Schnipke v. Safe–Turf Installation Group, LLC*, 3d Dist. No. 1-10-07, 2010-Ohio-4173, ¶30, citing *Burns v. Prudential Sec., Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶41.

**{¶ 33}** AT&T first complains of the following instructions:

**{¶ 34}** "If plaintiff's weight aggravated and made the original work related injury worse over the years, the employer assumes that risk and is responsible for all conditions which ultimately result from the original work related injury to its employees."

**{¶ 35}** AT&T argues that by giving this weight instruction, "the trial court effectively bestowed upon AT&T the burden of proving that [Halenar's] weight was not a dual proximate cause of his knee conditions." It further argues that the instruction was a misstatement of the law and inapplicable to the evidence. According to AT&T, there was no evidence that Halenar's weight combined with the motor vehicle accident may have proximately caused the

requested additional conditions.    We disagree.

{¶ 36} Before giving the above-cited instruction, the court also instructed:

{¶ 37} "The issue you must decide is whether Thomas Halenar is entitled to participate or continue to participate in the workers' compensation fund by reason of bilateral menisci tears and aggravation of preexisting degenerative changes in his left knee.

{¶ 38} "You are to find for Mr. Halenar if you determine these injuries arose from his original accident of June 12, 1992.

{¶ 39} "Issues.    The disputed issues for your decision are: * * * Did Thomas Halenar develop bilateral menisci tears and aggravation of preexisting degenerative changes in his left knee as a result of his original work-related accident of June 12, 1992? * * * Did the bilateral menisci tears and aggravation of preexisting degenerative changes of the left knee of Thomas Halenar — or of the left knee Thomas Halenar suffered arise from Mr.   Halenar's original work-related injury, even if years after the original injury?

{¶ 40} "* * *

{¶ 41} "Aggravation.   Aggravation of a preexisting condition having a real adverse effect on a preexisting condition is compensable.   In order to establish an aggravation claim in the present case, plaintiff must prove that the work incident in question caused an aggravation of a preexisting condition having some real adverse effect.   Plaintiff must demonstrate that some real adverse effect occurred.

{¶ 42} "Take employee as you find them.   You are instructed that under the workers' compensation law of Ohio an employer takes an employee as he finds them and assumes the risk of having an employee's existing condition aggravated by an injury which might not bother a person without the employee['s] preexisting condition."

{¶ 43} Reading these instructions in their entirety, we find that the trial court properly instructed the jury on the applicable law and did not improperly place the burden of proof on AT&T.   The instructions allow for Halenar to recover only for those conditions proximately caused by the work-related injury.   Further, contrary to AT&T's assertion, evidence of Halenar's weight was introduced at trial.   Indeed, AT&T made an issue of Halenar's weight, which was approximately 300 pounds at the time of the accident.   AT&T cross-examined Dr. Wilber, asking specifically whether a person's weight can aggravate or accelerate arthritis. On redirect, Dr. Wilber further opined that, "though you can't rule out the weight," Halenar's problems in his knees are "more related to his accident."   Under such circumstances, we cannot say that the trial court abused its discretion in providing the foregoing instructions. See *Schnipke*, supra.

{¶ 44} The fifth assignment of error is overruled.

{¶ 45} AT&T next challenges the following instruction relating to more than one proximate cause as being improperly given.

{¶ 46} "There may be more than one proximate cause of injury.   When the workplace

activities, conditions, and risks combine with other causes to proximately produce the injury, each is a proximate cause.   It is not necessary that each occur at the same time or place."

{¶ 47} This instruction was given following the trial court's charge of proximate cause. AT&T contends that the instruction was improper because Halenar never presented any evidence to support such an instruction.   We disagree.

{¶ 48} "It is well established that the trial court will not instruct the jury where there is no evidence to support an issue."   *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, citing *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 348 N.E.2d 135. "However, the corollary of this maxim is also true." Id., citing 89 Ohio Jurisprudence 3d (1989) 354-355, Trial, Section 289. "'In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.'" Id., citing *Feterle v. Huettner* (1971), 28 Ohio St.2d 54, 275 N.E.2d 340, syllabus.

{¶ 49} Our review of the record reveals that testimony offered by both Dr. Wilber and Dr. Zellers could lead a reasonable jury to conclude that the work-related accident combined with Halenar's weight could have contributed to his injuries.   See *Davis v. Johnson Controls Battery Group, Inc.*, 6th Dist. No. L-08-1065, 2009-Ohio-2159 (finding that dual causation instruction was warranted when evidence of claimant's obesity was introduced as possible

contributing factor of injury). Accordingly, we cannot say that the trial court abused its discretion in providing such an instruction.

**{¶ 50}** The sixth assignment of error is overruled.

Admission of Photographs

**{¶ 51}** In its final assignment of error, AT&T argues that the trial court abused its discretion in admitting as exhibits photographs of the totalled vehicles from the 1992 accident. But the record reveals that AT&T did not object to Halenar testifying to these photographs during his direct and, further, it did not object to Halenar's counsel displaying the photographs during his case in chief. And while AT&T did object to the photographs being admitted as exhibits, we find that, even if the admission was erroneous, such error was harmless because the jury had already seen the photos.

**{¶ 52}** The final assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, J., CONCUR